THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL CASE NO. 3:01-cr-00210-MR-WCM-1

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | O R D E R |
|  | ) |  |
| BOBBY LEON JOHNSON, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on the Defendant's "Application of Section 603 of the First Step Act (2018)" [Doc. 239], which the Court construes as a motion for compassionate release, and the Government's Motion to Seal [Doc. 245]. The Government opposes the Defendant's motion for compassionate release. [Doc. 243].

**I.   BACKGROUND**

In November 2002, the Defendant Bobby Leon Johnson pled guilty to various conspiracy, armed bank robbery, and firearm offenses. [Doc. 116]. In November 2003, the Court[1] sentenced him to a total term of 300 months

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding. Upon Judge Thornburg's retirement in 2009, this matter was reassigned to the undersigned.

of imprisonment. [Doc. 160]. The Defendant is currently housed at USP McCreary, and his projected release date is October 23, 2023.[2]

The Defendant now seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the ongoing COVID-19 pandemic. [Doc. 239]. Specifically, the Defendant argues that his underlying health conditions place him at a higher risk for severe illness from COVID-19, and that his particular vulnerability to the illness is an extraordinary and compelling reason for an immediate sentence reduction. [Id.]. The Court ordered the Government to respond to the Defendant's motion. [Text-Only Order entered Dec. 4, 2020]. The Government has filed its response. [Doc. 243]. This matter is ripe for disposition.

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to

---

[2] See https://www.bop.gov/inmateloc/ (last visited Jan. 20, 2021).

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has exhausted the necessary administrative remedies. Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ

disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this

4

Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant contends that he suffers from "uncontrolled hypertension" and that this condition, coupled with the presence and increasing threat of COVID-19, constitute "extraordinary and compelling reasons" for an immediate sentence reduction to time served. According to his BOP medical records, however, the Defendant's hypertension is well-controlled and does not present any impediment to his ability to provide self-care in the institution.[3] As for the risk posed to the Defendant by the COVID-19 pandemic, the Court notes that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates. Since 2012, the BOP has had a Pandemic Influenza Plan in place, which establishes a multi-phase framework for BOP facilities to implement in the

---

[3] Although the Defendant does not raise it in his motion, the Government points out that the BOP medical records also indicate that the Defendant suffers from mild chronic kidney disease. [Doc. 243 at 13]. These records indicate that this condition is well-controlled and being treated by BOP medical personnel. [See Doc. 244: BOP Medical Records at 4, 54].

5

event of a viral outbreak.[4]  The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January.  At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control ("CDC"), including by reviewing guidance from the World Health Organization ("WHO").  On March 13, 2020, BOP began to modify its operations, in accordance with its COVID-19 Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.[5]

The BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters in order to stop any spread of the disease. Only limited group gathering is allowed,

---

[4] BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.

[5] See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp.

6

with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training. All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors. Social and legal visits were stopped as of March 13, and remain suspended at this time, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff. Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the

Director of BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. Since March 26, 2020, BOP has transferred 20,480 inmates to home confinement.[6]

---

[6] See https://www.bop.gov/coronavirus/ (last visited Jan. 20, 2021).

Taken together, all these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given the BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

For all these reasons, the Court concludes that the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i).

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

10

Case 3:01-cr-00210-MR   Document 246   Filed 01/25/21   Page 10 of 13

Here, the Defendant's offenses of conviction were very serious. The Defendant and his co-defendants engaged in a series of violent armed robberies that resulted in numerous injuries and a total financial loss in excess of $1.3 million. [See Doc. 217: PSR at 5-8 ¶¶ 12-20, 26]. Additionally, the Defendant has an extensive criminal history, including convictions for breaking and entering, larceny, drug possession, carrying a concealed weapon, and assault on a female. [Id. at 20-24 ¶¶ 156-68]. At the time that the robberies were committed, the Defendant was on unsupervised probation for resisting a public officer and larceny. [Id. at 24 ¶ 171]. Further, while the Defendant has been incarcerated, he has committed a number of disciplinary infractions, including fighting with another person, assault, refusing to obey orders, and refusing work/program assignments. [See Doc. 242-1: BOP Disciplinary Record].

For all these reasons, the Court concludes that the need for the sentence to reflect the true extent and seriousness of the defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the defendant's further crimes militate against a sentence reduction in this case.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

B. **Motion to Seal**

The Government moves the Court for leave to file under permanent seal the BOP medical records [Doc. 244] filed in support of its Response. For grounds, counsel states that the medical records contain highly personal and confidential material concerning the Defendant's medical conditions. [Doc. 245].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion. The Government filed its motion on January 22, 2021, and such motion has been accessible to the public

12

through the Court's electronic case filing system since that time. Further, the Government has demonstrated that the subject medical records contain sensitive information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Application of Section 603 of the First Step Act (2018)" [Doc. 239], which the Court construes as a motion for compassionate release, is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal Exhibit [Doc. 245] is **GRANTED**, and the medical records submitted in support of the Government's Response [Doc. 244] shall be filed under seal and shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: January 25, 2021

Martin Reidinger
Chief United States District Judge